UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

VERNON FLANNING, SR.,

      Plaintiff,

v.                                   Case No. 5:12cv337/MW/CJK

STATE OF FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

This cause is before the court upon plaintiff's second amended civil rights complaint filed under 42 U.S.C. § 1983.  (Doc. 57).  Upon initial review of the complaint, the court found that the facts, as presented, failed to support a viable § 1983 claim against several of the named defendants.  The court thus provided plaintiff an opportunity to correct the deficiencies and clarify his allegations in an amended complaint.  Upon review of plaintiff's second amended complaint, in which plaintiff essentially reiterates the allegations set forth in his initial and amended complaints, the court concludes that this case should be dismissed against defendants Perish, Brock, Padgett, Froster, Jackson, Holland, and the Apalachee Correctional Institution

Medical Department, because plaintiff has not presented a plausible claim for relief against those defendants.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, an inmate with the Florida Department of Corrections ("DOC"), is currently confined at Apalachee Correctional Institution ("Apalachee CI"). Plaintiff names eight defendants in this action: Sergeant H. Baker, Officer Perish, Officer Brock, Sergeant Padgett, Sergeant Froster, Sergeant Jackson, Officer Holland, and Apalachee CI Medical Department. (Doc. 57, pp. 2-3). The following matters are taken, often verbatim, from the pending complaint.

On "Friday 27th, 2012," while confined at Apalachee CI, plaintiff inquired of defendant Baker, "I thought we were not supposed to be housed, with youthful offenders, plus, it is a pink sign over his cell." (Doc. 57, p. 6). Plaintiff claims that the pink sign indicated that the youthful offender would expose his genitals to women. Defendant Baker replied that he would not move plaintiff to another cell and further stated, "yall [sic] have to fight. Then, I can move yall [sic]." (Doc. 57, p. 6). Plaintiff then requested a DC 1-303 form, to which defendant Baker again replied, "fight! Or, I am gonna spray yall [sic]." Defendant Baker continued to tell plaintiff he could only be moved if he fought with his cell mate. Later, plaintiff was taken to the showers by officer Lester. Plaintiff requested to see "the captain" and be placed on "P.M. status" because he was "in fear of [his] life." After being placed back in his cell, Officer Lester asked defendant Baker what to do with plaintiff. Defendant Baker responded that plaintiff should be taken to a holding cell so that he could see the captain.

While plaintiff was being transported to the holding cell by officer Lester, defendant Baker objected and "took [plaintiff] by the arm; and, pushed [plaintiff] into" his original cell.  (Doc. 57, p. 7).  Plaintiff then asked officers Lester and Roberts if they were going to "take care this [sic] problem."  Officers Lester and Roberts replied that they would but that it was defendant Baker's "call."  About an hour later, defendant Baker came by plaintiff's cell and plaintiff asked if he was going to be moved.  Defendant Baker again responded, "I don't see no injuries."  Plaintiff asked if defendant Baker was going to make plaintiff fight his cell mate in order to be moved.  Defendant Baker then stated, "I am gonna show you a cracker," and "blanked" his eye at the "young offender" in plaintiff's cell.  (Doc. 57, p. 7).  Plaintiff then "defended himself" and fought with his "cell mate."  Defendant Baker watched plaintiff and his cell mate fight.  Plaintiff also heard the voice of nurse Smith during the fighting.  Eventually, plaintiff and his cell mate stopped fighting, and plaintiff looked over and saw defendant Baker and nurse Smith outside the cell.  Plaintiff alleges that he had "head wounds," which nurse Smith "observed."  Defendant Baker and nurse Smith then walked away from plaintiff's cell and plaintiff started to yell "I want P.M.!"  Nurse Smith then submitted plaintiff's requests for P.M. status.  An hour later, defendant Baker returned to plaintiff's cell.  Plaintiff again requested to be moved and defendant Baker indicated he could only move them if they fought.  Plaintiff and his cell mate again started to fight and in response, defendant Baker pepper sprayed them both.  After the fighting stopped, plaintiff and his cell mate were taken to the showers.

Once at the showers, defendant Brock told plaintiff he was a "demon" and he should never "forget that!"  (Doc. 57, p. 8).  Plaintiff was next taken to medical so he

could receive some fluids in his eyes.  Plaintiff requested an x-ray of his head.
Plaintiff also notes he has seizures and high blood pressure, and further notes that he
has had seizures in the past as a result of toxic chemicals, including pepper spray.
Defendant Perish "took watch" of plaintiff and threatened that he was going to "spray
[plaintiff's] retarded ass!"  (Doc. 57, p. 8).  Plaintiff again requested to be put on P.M.
status, but defendant Perish denied his request.

Plaintiff then takes issue with the remaining defendants' conduct.  Plaintiff
claims defendant Padgett made threatening statements towards him and even made
plaintiff's quad mates eat last.  Defendant Froster "ordered" plaintiff to clean the
dorm windows at night but refused to inform the other inmates that plaintiff would
be cleaning the windows.  Defendant Froster threatened plaintiff with pepper spray.
Defendant Jackson also threatened to spray plaintiff with pepper spray and threw
plaintiff's breakfast tray on the ground.  Plaintiff indicates that he had to clean up the
spilled food with his bare hands.  Defendant Holland told plaintiff there were no
cameras in his dorm area and refused to let plaintiff list his witnesses on the
investigation report.  Plaintiff also claims he was forced to sign the disciplinary report
form because defendant Holland told him he would note that plaintiff refused to sign
the report.

As a result of the foregoing conduct, plaintiff claims violations of his Fourth,
Eighth, and Fourteenth Amendment rights.  Plaintiff contends he currently suffers
from mental anguish, arm and back injuries, migraine headaches, and a concussion
that was never treated.  In relief, he requests medication to treat his medical
conditions, including brain scans, MRI's, and CAT scans; $200,000 in compensatory
damages; and $200,000 in punitive damages.  (Doc. 57, p. 18).

DISCUSSION

Title 28 U.S.C. § 1915 mandates that the district court dismiss a civil rights complaint if the complaint: 1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or 2) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.   The court must read plaintiff's *pro se* allegations in a liberal fashion.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997).  The court accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff.  *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).  The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim).   A complaint is also subject to dismissal for failure to state a claim when its allegations, on their face, show that an affirmative defense bars recovery on the claim.  *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *see also Jones v. Bock*,  549 U.S. 199, 215 (2007) (reiterating that principle).

Claims Against the Apalachee CI Medical Department

First, while plaintiff brings suit against Apalachee CI medical department, a prison's medical unit cannot be sued under § 1983 because it is not a person.  *See*

*Murphy v. Turpin*, 159 F. App'x 945, 949 n.4 (11th Cir. 2005).  Plaintiff's claims against the Apalachee CI medical department must therefore be dismissed.

Fourth Amendment Claims

Plaintiff claims violations of his Fourth Amendment rights but advances no facts demonstrating that the defendants violated such rights.  In support of his claims, plaintiff alleges the Fourth Amendment violations occurred because of "life, property, and safety, excessive powers."  (Doc. 57, p. 12).  After review of the complaint, the court cannot determine a cognizable Fourth Amendment violation committed by the defendants or facts which would be able to support such a claim.  The entirety of plaintiff's complaint appears to advance Eighth Amendment violations, not Fourth Amendment violations.  Accordingly, plaintiff's claims concerning violation of his Fourth Amendment rights should be dismissed.

Fourteenth Amendment Claims

Plaintiff also alleges violations of his Fourteenth Amendment rights.  In *Sandin v. Conner*, 515 U.S. 472, 478, 484, 115 S. Ct. 2293, 132 L .Ed. 2d 418 (1995), the Supreme Court recognized only two instances in which a prisoner may claim a constitutionally protected liberty interest which implicates constitutional due process concerns:  (1) when actions of prison officials have the effect of altering the inmate's term of imprisonment, and (2) where a prison restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Without either the loss of gain-time credits or "atypical" confinement, the Due Process Clause itself affords no protected liberty interest that invokes procedural protections.  *Sandin*, 515 U.S. at 487.  Because plaintiff lost no gain-time, and because placement into a cell with an inmate who plaintiff characterizes as a

"youthful offender" is not "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," 515 U.S. at 486, plaintiff cannot state a plausible claim for violation of his due process rights in connection with his cell placement or disciplinary report. *See, e.g.*, *Sandin*, 515 U.S. at 486 (holding that thirty-day placement in disciplinary confinement was not atypical or significant enough to trigger due process protection); *Rogers v. Singletary*, 142 F.3d 1252 (11th Cir. 1998) (finding that inmate failed to show deprivation of a protected liberty interest where the inmate was in segregated confinement for two months); *see also, e.g., Smith v. Reg'l Dir. Fla. Dep't. of Corr.*, 368 F. App'x 9, 13 (11th Cir. 2010) (finding that inmate failed to state a claim for a due process violation where he was subjected to confinements of fifteen and thirty days in disciplinary confinement); *Perez v. Humphries*, No. 1:11cv180/RS/GRJ, 2011 WL 6960817, at *3 (N.D. Fla. 2011) (concluding that plaintiff's placement in disciplinary confinement for sixty days did not implicate a liberty interest protected by procedural due process), *Report and Recommendation adopted*, 2012 WL 32566 (N.D. Fla. Jan. 6, 2012).   As to plaintiff's potential claim that the defendants violated his equal protection rights under the Fourteenth Amendment, plaintiff has put forward no facts evidencing such a violation. *See Wright v. Butts*, 953 F. Supp. 1352, 1360 (M.D. Ala. 1996) ("In order to prove a violation of the equal protection clause, the plaintiff 'must show that the challenged action was 'taken at least in part' because of, not 'in spite of,' its adverse effects upon an identifiable group.'" (quoting *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979))).   Accordingly, plaintiff's Fourteenth Amendment claims should also be dismissed.

Eighth Amendment Claims

Plaintiff's complaint more directly implicates the Eighth Amendment's proscription against cruel and unusual punishment.  "To show a violation of [his] Eighth Amendment rights, plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1319 (11th Cir. 2005) (quotation omitted).  "To be deliberately indifferent a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 1319-20 (quotations omitted).  Simple negligence is not actionable under § 1983, and a plaintiff must allege "a conscious or callous indifference to a prisoner's rights."  *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).  Some of the ways in which prison officials might avoid Eighth Amendment liability include showing (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;" (2) that "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent;" or (3) that "they responded reasonably to the risk, even if the harm ultimately was not averted."  *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1982-83, 128 L. Ed. 2d 56 (1994).

Here, plaintiff's claims against defendants Perish, Brock, Padgett, Froster, Jackson, and Holland do not make out Eighth Amendment violations.  According to the complaint, defendant Brock verbally threatened plaintiff and called him a "demon[]." (Doc. 57, p. 8).  Defendant Perish called plaintiff a "retard," threatened

to pepper spray plaintiff, and refused to place plaintiff on protective management status. Defendant Padgett made plaintiff and the other inmates in plaintiff's quad eat last. Defendant Froster made plaintiff clean windows at night. Defendant Jackson threw plaintiff's breakfast tray down and made plaintiff clean it up with his hands. Finally, defendant Holland told plaintiff that there were no cameras in the quad room and refused to let plaintiff list his own witnesses on the disciplinary report. None of the foregoing claims represent constitutional violations under the Eighth Amendment. Plaintiff appears to simply be naming individuals who have wronged him or offended his sensibilities at some point in time. Plaintiff suffered no physical injury from these defendants' actions and has not demonstrated a substantial risk of serious harm stemming from this conduct.

Defendant Baker's claimed actions, however, are different on their face. According to the complaint, defendant Baker told plaintiff and his cell mate he would not move them unless they fought. These actions resulted in plaintiff and his cell mate fighting on two separate occasions and plaintiff suffering injuries. Moreover, plaintiff alleges that defendant Baker then pepper sprayed him following the fight with his cell mate. Plaintiff claims he suffered a concussion and head and back injuries as a result of defendant Baker's actions. At this stage, therefore, the claims against defendant Baker are sufficient to survive this initial screening.

Deliberate Indifference to Plaintiff's Medical Condition

Assuming plaintiff is attempting to assert a claim of deliberate indifference to his medical condition, for purposes of an Eighth Amendment claim, such has not been accomplished. To prevail on an Eighth Amendment deprivation of medical care claim, a prisoner must meet three elements. First, the plaintiff must demonstrate "an

objectively serious medical need" so grave that, "if left unattended, [it] poses a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotation marks, alterations and citations omitted).  "[A] serious medical need is . . . one . . . diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal marks omitted).  The second element requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor*, 221 F.3d at 1258.  "To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Id.* (quoting *Estelle*, 429 U.S. at 105).  Deliberate indifference is established only when the plaintiff demonstrates that the official knew of and disregarded an excessive risk to his health or safety; in other words, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The official's response must have been so inadequate as to "constitute an unnecessary and wanton infliction of pain" and not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258.  Notably, where the inmate received medical attention and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris*, 941 F.2d at 1507 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989)); *see also Woody v. Cronic*, 401 F. App'x. 509, 512 (11th Cir. 2010) (unpublished opinion)

("Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference."). Indeed, a difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *Harris*, 941 F.2d at 1505; *Waldrop*, 871 F.2d at 1033; *Murrell v. Bennett*, 615 F.2d 306, 310 n.4 (5th Cir. 1980).[1]  In order to satisfy the final element of an Eighth Amendment claim, a plaintiff must show that the official's deliberate indifference caused his injury. *Taylor*, 221 F.3d at 1258; *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) (reiterating the elements of an Eighth Amendment claim).

Delay in providing "diagnostic care and medical treatment known to be necessary" can qualify as deliberate indifference. *H.C. ex rel. Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986); *see also Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("[I]f necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out."). That delay, however, must be "tantamount to unnecessary and wanton infliction of pain," and "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994). The Eleventh Circuit has found cognizable deliberate indifference claims when prison officials delayed treatment for life-threatening emergencies and in "situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Hill* at 1187. "[D]elay

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation." *Id*. at 1187-88.

Plaintiff alleges that he was not taken to the medical station until thirty minutes after he was pepper sprayed. Plaintiff's complaint, however, makes clear that the defendants first took plaintiff to the showers so he could wash the pepper spray off of his body. Following the shower, defendants escorted plaintiff to medical to receive treatment. Plaintiff further states that the nursing staff recorded plaintiff's request to have an x-ray of his head. Plaintiff seems to take issue with the extent of the medical treatment, arguing that he has known seizures which prohibit the use of "toxic, and nontoxic chemicals." (Doc. 57, p. 10). Notably, plaintiff does not claim he suffered any such seizures as a result of being pepper sprayed. Because plaintiff is taking issue with the adequacy of the medical attention he received, he has not sufficiently alleged a claim for deliberate indifference to his medical condition. *See Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (noting, "whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment"); *Enriquez v. Kearney*, 694. F. Supp. 2d 1282, 1296 n.12 (S.D. Fla. 2010) ("[T]he propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action."). Moreover, plaintiff has not claimed any further injury, or exacerbation of injury, from what he perceives as medical inattention. No deliberate indifference claim has been made out.

Punitive and Compensatory Damages

Because defendants Perish, Brock, Padgett, Froster, Jackson, and Holland did not cause plaintiff any demonstrable injuries, plaintiff's damages claims against these

defendants, even assuming some cause of action were stated, are also subject to dismissal under the Prison Litigation Reform Act ("PLRA"). The PLRA provides, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). "[T]he phrase 'Federal civil action' means all federal claims, including constitutional claims." *Napier v. Preslicka*, 314 F.3d 528, 532 (11th Cir. 2002). This action, brought by plaintiff under 42 U.S.C. § 1983, is a "Federal civil action" under this definition. It is evident from the face of plaintiff's complaint that plaintiff was a prisoner at the time he filed this action, and that the harm complained of occurred while plaintiff was in custody. Plaintiff's damages claims are based on the mental and emotional injury plaintiff suffered as a result of being sprayed with the chemical agent, and/or the fact of the alleged constitutional deprivation itself (divorced from any mental or emotional injury plaintiff suffered). Plaintiff's allegations do not reasonably support an inference that plaintiff suffered any physical injury from the above named defendants, much less more than a *de minimis* physical injury. *See, e.g., Kornagay v. Burt*, No. 3:09cv281/LC/EMT, 2011 WL 839496 (N.D. Fla. Feb 08, 2011) (finding that prisoner failed to show more than a *de minimis* physical injury resulting from officer's use of chemical agent) (citing cases), *Report and Recommendation adopted*, 2011 WL 855619 (N.D. Fla. Mar 09, 2011); *Beecher v. Jones*, No. 3:08cv416/MCR/EMT, 2010 WL 5058555, at *5-6 (Oct. 29, 2010), (finding that prisoner who alleged no physical injury arising from use of chemical agents failed to show requisite physical injury under § 1997e(e)), *Report and Recommendation adopted*, 2010 WL 5055991 (N.D. Fla. Dec. 6, 2010); *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (finding that prisoner who suffered the discomfort of

pepper spray had shown only *de minimis* injury, insufficient to satisfy § 1997e(e));
*Palmer v. Walker*, No. 2:09cv401, 2011 WL 836928, at *8 (M.D. Fla. Mar. 9, 2011)
(finding that prisoner who suffered temporary eye irritation as the result of
application of chemical agents failed to show more than a *de minimis* physical injury
under § 1997e(e)).   Plaintiff is prohibited under the PLRA from bringing his
compensatory and punitive damages claims.   *Harris v. Garner*, 190 F.3d 1279,
1287-88 (11th Cir. 1999) ("*Harris I*"), *vacated in part and reinstated in part on reh'g*,
216 F.3d 970 (11th Cir. 2000) (en banc) ("*Harris II*") (affirming district court's
dismissal, under 42 U.S.C. § 1997e(e), of prisoners' compensatory and punitive
damages claims arising from prison officials' alleged unconstitutional conduct, where
prisoners alleged no physical injury arising from that conduct); *Al-Amin v. Smith*, 637
F.3d 1192 (11th Cir. 2011) (holding that "the overall tenor of *Harris* and its progeny,
when taken together, unmistakably supports" the conclusion that § 1997e(e) applies
to constitutional claims and precludes the recovery of compensatory and punitive
damages in the absence of the requisite physical injury).   The only damages plaintiff
will be able to recover are nominal ones (ordinarily $1.00).   Plaintiff's damages
claims, as well as the substantive claims against the aforementioned defendants,
should be dismissed.

Accordingly, it is respectfully RECOMMENDED:

1.   That this action be DISMISSED without prejudice under 28 U.S.C. §
1915(e)(2)(B)(ii) against defendants Apalachee CI Medical Department, Perish,
Brock, Padgett, Froster, Jackson, and Holland, for plaintiff's failure to state a claim
upon which relief may be granted.

2.   That this case be remanded to the undersigned for service and further proceedings on the individual capacity claim alleging Eighth Amendment violations against Defendant Baker.

At Pensacola, Florida this 11th day of August, 2014.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).