UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

VERNON FLANNING, SR.,

    Plaintiff,

v.                                      Case No. 5:12cv337-MW-CJK

H. Baker,

    Defendant.

_____/

ORDER and
REPORT AND RECOMMENDATION

    This prisoner civil rights case, brought under 42 U.S.C. § 1983, is before the court on defendant Baker's motion for summary judgment. (Doc. 111).[1] Defendant argues: (1) plaintiff cannot establish an Eighth Amendment violation; (2) plaintiff cannot recover compensatory or punitive damages under the Prison Litigation Reform Act because he suffered only *de minimis* injuries; and (3) because plaintiff does not request nominal damages or "any further relief," this case should be dismissed in its entirety. (*Id.*). Plaintiff responded in opposition. (Docs. 119-121, 123-124). The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After

---

[1] The references to document and page numbers will be to those automatically generated by the CM/ECF system.

careful consideration of the record, the parties' submissions, and the relevant law, the undersigned recommends that defendant's motion for summary judgment be denied because material factual disputes exist concerning whether defendant provoked a fight between plaintiff and his cellmate, whether defendant maliciously used chemical agents, and whether plaintiff's injuries were more than *de minimis*.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, proceeding *pro se* and *in forma pauperis*, is an inmate of the Florida Department of Corrections currently confined at Cross City Correctional Institution. (Doc. 98). On July 10, 2014, plaintiff filed the second amended complaint, the operative pleading in this action. (Doc. 57). Sergeant H. Baker is the only remaining defendant.[2] At the time of the events described in the complaint, Baker worked as a correctional officer at Apalachee Correctional Institution. (*Id.*, p. 2). The complaint alleges Baker violated plaintiff's Eighth Amendment rights by spraying plaintiff with chemical agents and by instigating a fight between plaintiff and his cellmate. For relief, plaintiff seeks compensatory and punitive damages. (*Id.*, p. 18).

The parties commenced discovery on August 14, 2015. (Doc. 96). Baker moved for summary judgment on December 16, 2015, arguing: (1) "plaintiff fails to

---

[2] Although the second amended complaint names eight defendants, the court dismissed plaintiff's claims against seven defendants (Apalachee CI Medical Department, Perish, Brock, Padgett, Froster, Jackson, and Holland) for failure to state a claim upon which relief may be granted. (Docs. 62, 65).

establish an Eighth Amendment violation"; (2) "plaintiff's claims for compensatory and punitive damages are barred because he failed to allege the requisite physical injury under 42 U.S.C. § 1997e(e)"; (3) "because plaintiff does not request nominal damages or 'any further relief,' his case should be dismissed in its entirety"; and (4) "Baker is entitled to qualified immunity."[3]  (Doc. 111).

Plaintiff filed several documents in response to the motion with the following titles: "Motion for Housing Log/and Deliberate Indifferent" (doc. 119); "Plaintiff's Motion to Object Defendant's Dismiss" (doc. 120); "Summary Judgment Motion and Memorandum" (doc. 121); "Declaration in Support of Summary Judgment Motion and Memorandum/and Class Action Certification Ascertainability Motion" (doc. 123); and "Motion of Acknowledgment to Defendant's Response" (doc. 124). Defendant Baker moved to strike plaintiff's motion for summary judgment as untimely filed.  (Doc. 122).  Because plaintiff submitted the "Summary Judgment Motion and Memorandum" (doc. 121) after the dispositive motion deadline, the motion to strike will be granted.  In addition, plaintiff's "Motion for Housing

---

[3] Although defendant Baker asserts he is entitled to qualified immunity, he merely argues his actions did not violate plaintiff's constitutional rights. (Doc. 111, p. 23-24). Thus, an independent discussion of qualified immunity is not warranted. *See Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015) ("We focus on two questions: first, . . . whether there is an underlying constitutional violation, [and] second, . . . whether the law the public official is alleged to have violated was clearly established at the time of incidents giving rise to the suit.") (quotations and citation omitted); (Doc. 111, p. 23-34) ("Baker did not commit any constitutional violation[.] . . . This Court therefore does not need to reach the second prong of the qualified immunity test.").

Case No. 5:12cv337-MW-CJK

Log/and Deliberate Indifferent" (doc. 119) will be denied because it does not make a cognizable request for relief. The undersigned, however, will consider the arguments raised in all the above documents in ruling on defendant's motion for summary judgment.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 160 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id*. An issue is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id*. Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could

Case No. 5:12cv337-MW-CJK

draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995).  Generally, a court must view the facts in the light most favorable to the non-moving party (here, plaintiff) and draw all reasonable inferences in favor of that party.  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).  The court may not, however, accept any facts that are "blatantly contradicted by the record, so that no reasonable jury could believe [them]." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).  Moreover, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011). "A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 251).

## FACTS

The factual matters pertinent to the resolution of the motion are drawn from plaintiff's verified second amended complaint (doc. 57) and the evidence in the summary judgment record (doc. 111-1 – doc. 111-5).  *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding that specific facts pled in a sworn

complaint must be considered in opposition to a motion for summary judgment). Where the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff." *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005). Nevertheless, matters stated below as "facts" for purposes of summary judgment review may not be the actual facts. *Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

Plaintiff's Version of Events

The second amended complaint sets forth some pertinent factual matters from plaintiff's perspective. (Doc. 57). While confined at Apalachee Correctional Institution on February 27, 2012, plaintiff was housed with a youthful offender named Paul Watson. Plaintiff stated to Sergeant Baker, "I thought we were not supposed to be housed with youthful offenders, plus, it is a pink sign over his cell."[4] Plaintiff requested a transfer to an empty cell upstairs, which Baker denied. Watson told Baker, "I want my room to myself. I will move upstairs." Plaintiff asked Baker to contact the captain but Baker refused. Instead, Baker stated, "Y'all have to fight. Then, I can move y'all." After Baker denied plaintiff's request for a grievance form, he told plaintiff and Watson he would spray them with chemical agents if they did

---

[4] According to plaintiff, a pink sign indicates the inmate "expose[s] his genitals to women." (Doc. 57, p. 6).

Case No. 5:12cv337-MW-CJK

not fight. Baker continued to advise plaintiff he would not be moved unless he fought with Watson. Baker then "walked off."

Twenty minutes later, Officers Lester and Roberts escorted plaintiff to the showers. When Officer Lester returned to escort plaintiff back to his cell, plaintiff requested protective custody. Officer Lester summoned Sergeant Baker to the shower and informed him plaintiff was requesting protective custody and to speak with the captain. Sergeant Baker left. After "all the bottom floor inmates were put in their cells[,]" Officer Lester returned to plaintiff's cell with Officer Roberts and Sergeant Baker. Plaintiff again requested protective custody, indicating he was "in fear of [his] life." Sergeant Baker ordered Officer Lester to take plaintiff to a holding cell so the captain could see him. Before exiting the quad, however, Sergeant Baker rescinded the order and directed Officer Lester to take plaintiff back to his regular cell.

After being put back in the cell with Watson, plaintiff stopped Officers Lester and Roberts during one of their security checks. Plaintiff asked the officers if they were "gonna take care [of] this problem?" The officers replied, "We would but it is Serge's Baker call." An hour later, plaintiff asked Sergeant Baker if plaintiff or Watson would be moved. Baker stated, "I don't see no injuries." Plaintiff asked if Baker intended to make plaintiff and Watson fight. Baker said "I am gonna show you a cracker" and "blanked his eye at the young offender[.]" Plaintiff "defended

himself" as Sergeant Baker watched the cellmates fight. During the fight, plaintiff heard Nurse Smith's voice. The fight stopped and plaintiff saw Baker and Smith standing four feet from the cell. Plaintiff showed his head wounds to Smith and asked Baker for a cell transfer. Baker and Smith walked away from plaintiff's cell as plaintiff yelled that he wanted protective custody.

An hour later, Baker returned to plaintiff's cell. Plaintiff again requested a cell transfer. Baker told plaintiff "fight! I do not see nothing." Plaintiff and Watson began fighting again. After watching the fight, Sergeant Baker sprayed plaintiff in the eyes with chemical agents. Both inmates were subsequently handcuffed and escorted to the showers. From these events, plaintiff asserts he "suffers from mental anguish, arm, back injuries, and a concussion that was never treated." Plaintiff claims "[t]he concussion is a long term injury" and he started having "daily intense migraines headaches."

<u>Defendant's Version of Events</u>

While conducting a routine security check on February 27, 2012, Sergeant Baker observed plaintiff and Watson hitting each other in the head and upper torso with closed fists. (Doc. 111-3, p. 1). The fight resulted from a personal disagreement between the cellmates and Baker did not instigate or encourage the fight. (Doc. 111-4, p. 1). Baker ordered both inmates multiple times to stop fighting but the inmates ignored the orders. (Doc. 111-3, p. 1-2). After his verbal commands

proved ineffective, Baker sprayed both inmates in the head and upper torso with chemical agents. (Doc. 111-3, p. 2). The inmates subsequently complied with orders to cease fighting. (*Id.*). Baker called additional correctional officers to plaintiff's cell. (*Id.*). Plaintiff was placed in hand restraints, removed from the cell, and escorted to take a cool water decontamination shower. (*Id.*).

After the shower, Nurse Ronyon Campbell examined plaintiff. The nurse noted scratches and some swelling to plaintiff's upper lip. (Doc. 111-2, p. 9-12). Plaintiff was escorted to a clean uncontaminated cell and observed for respiratory distress for approximately one hour. (*Id.*, p. 12). Based on the incident, Baker wrote a disciplinary report for fighting and a disciplinary report for disobeying an order. (Doc. 111-3, p. 2). Plaintiff was found guilty of both infractions and sentenced to disciplinary confinement. (*Id.*).

## DISCUSSION

Eighth Amendment

Defendant Baker argues plaintiff "cannot sustain an Eighth Amendment violation" because "the allegation that Baker instructed Plaintiff and inmate Watson to fight is implausible and refuted by the record[.]" (Doc. 111, p. 10, 14-15). Defendant also claims his use of chemical agents did not violate the Eighth Amendment because it was justified by the need to stop the fight between plaintiff and Watson. (Doc. 111, p. 10-14).

"The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (*quoting Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)) (alterations and quotation marks omitted). "In particular, under the Eighth Amendment, 'prison officials have a duty to protect prisoners from violence at the hands of other prisoners.'" *Id.* (*quoting Farmer*, 511 U.S. at 833). "To make a failure to protect claim under the Eighth Amendment, [plaintiff] must plead facts that establish '(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" *Losey v. Warden*, 521 F. App'x 717, 719 (11th Cir. 2013) (*quoting Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995)). Deliberate indifference means that a prison official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (*quoting Farmer*, 511 U.S. at 837). In addition, "[t]he use of force in a custodial setting does not violate the Eighth Amendment 'as long as it is applied in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm.'" *Williams v. Slack*, 438 F. App'x 848, 850 (11th Cir. 2011) (*quoting Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002)).

The parties present a classic case of conflicting versions of the events surrounding the fight between plaintiff and Watson. Defendant claims plaintiff's version is implausible and refuted by the record—including declarations from Baker and Watson.[5] The court, however, must view the facts in the light most favorable to plaintiff for purposes of summary judgment. *See Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986) ("[T]he district court must not resolve factual disputes by weighing conflicting evidence, since it is the province of the jury to assess the probative value of the evidence.") (citations omitted); *Reid v. Sec'y, Fla. Dep't of Corr.*, 486 F. App'x 848, 852 (11th Cir. 2012) ("[F]or purposes of summary judgment, there is nothing inherently wrong with 'self-serving testimony,' and it may not be disregarded by the district court in determining whether there is a genuine dispute of fact on a material issue in the case.").

Plaintiff says defendant: (1) informed plaintiff and Watson a cell transfer was contingent on the inmates fighting each other; (2) threatened to spray the inmates with chemical agents if they refused to fight; (3) declined plaintiff's requests for protective management and to see the captain; and (4) watched plaintiff and Watson fight without intervening. Inciting prisoners to fight each other and failing to protect

---

[5] In support of his argument, defendant Baker cites *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007), which states: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." The undersigned notes the summary judgment record in *Scott* included a videotape of the relevant events. *Id.* at 378-81. *Scott*, therefore, is distinguishable from the present case.

an inmate from an attack by another inmate are sufficient to establish liability under the Eighth Amendment. *See Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992) (holding complaint alleging that a prison guard incited other inmates to beat the plaintiff stated a cognizable excessive force claim, because "[w]hen an inmate is able to prove such intent, it is as if the guard himself inflicted the beating as punishment"); *Randle v. Alexander*, 960 F. Supp. 2d 457, 472-74 (S.D.N.Y. 2013) (recognizing that prison guard who forced two inmates to fight could violate the Eighth Amendment under either an excessive force theory or a failure to protect theory); *Jones v. St. Lawrence*, No. CV408-095, 2008 WL 5142396, at *5 (S.D. Ga. Dec. 5, 2008) ("Numerous courts—including the Eleventh Circuit—have recognized that inciting other inmates to harm a prisoner, such as by labeling the prisoner a 'snitch' or informant, has the potential for great harm and may constitute a violation of the Eighth Amendment.").

Plaintiff, therefore, has established a genuine dispute of material fact regarding whether Baker's actions both before and during the fight constitute a violation of the Eighth Amendment. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("A prisoner can state a section 1983 claim against prison personnel under the eighth amendment by establishing that the prison personnel acted with 'deliberate indifference' in creating the condition that violates the eighth amendment."); *Randle*, 960 F. Supp. 2d at 471 ("[P]rison officials may not abuse

prisoners directly, nor may they indirectly subject prisoners to harm by facilitating abuse at the hands of prisoners' fellow inmates."); *Montero v. Crusie*, 153 F. Supp. 2d 368, 376-77 (S.D.N.Y. 2001) (denying summary judgment on Eighth Amendment claim "[b]ecause genuine issues of material fact exist concerning defendants' role in attempting to incite a fight between plaintiff and [another inmate]"). Summary judgment on plaintiff's Eight Amendment claim concerning the fight between plaintiff and Watson is not appropriate.

Likewise, if—as plaintiff claims—defendant Baker sprayed plaintiff with chemical agents after the second fight between Watson and plaintiff, the use of the agents could be seen as malicious and not as a good-faith effort to restore discipline. *See Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) ("[I]t is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain."); *cf. Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002) ("Courts have consistently concluded that using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else."). Defendant, therefore, is not entitled to summary judgment on plaintiff's Eighth Amendment claim concerning defendant's use of chemical agents.

<u>42 U.S.C. § 1997e</u>

Defendant claims plaintiff cannot recover compensatory or punitive damages under the Prison Litigation Reform Act ("PLRA") because he suffered only *de minimis* injuries. The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). "Under the statute and [Eleventh Circuit] caselaw, an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury." *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015); *see also Al-Amin v. Smith*, 637 F.3d 1192, 1199 (11th Cir. 2011) (PLRA precludes the recovery of punitive damages in the absence of physical injury); *Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000) ("compensatory damages under § 1983 may be awarded only based on *actual injuries* caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated").

Baker argues that mental anguish, arm and back injuries, a concussion, and migraine headaches "constitute *de minimis* injuries insufficient to meet the standard imposed by 42 U.S.C. § 1997e(e)[.]" (Doc. 111, p. 17). Plaintiff, however, says he suffered a significant head injury as a result of the fight with Watson. A concussion

and migraine headaches may be considered more than *de minimis* injuries. *See Payne v. Dickerson*, 334 F. App'x 629, 631 (5th Cir. 2009) (in context of Fourth Amendment excessive force claim, plaintiff "made sufficient allegations that he suffered more than a de minimis injury as a result of the alleged excessive use of force as he alleges that he was thrown head first into a ditch and that he now suffers chronic migraine headaches"); *B.J.R. ex rel. Garcia v. Golgart*, Civil No. 11-1105 (JRT/SER), 2013 WL 3455598, at *8 n.3 (D. Minn. July 9, 2013) ("A concussion is more serious than a back contusion with no bruising or swelling and no acute distress, relatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition, or very minor injuries, likely nothing more than the temporary and slight aggravation of pre-existing conditions, all of which have been held to be de minimis.") (internal quotations and citations omitted); *Johnson v. Jacobson*, No. 3:06-CV-0766-H, 2008 WL 2038882, at *6 (N.D. Tex. Apr. 28, 2008) (finding that a concussion is a serious injury). As the Eleventh Circuit has noted, "the physical injury must be more than de minimis, but need not be significant." *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), *vacated in part on other grounds*, 216 F.3d 970 (11th Cir. 2000) (en banc).

Alternatively, as to the extent of injury, defendant claims contemporaneously created medical records refute plaintiff's allegations concerning the severity and cause of his injuries. (Doc. 111, p. 20-22). Defendant argues: (1) the nurse

examining plaintiff after the fight and application of chemical agents did not observe any of the injuries referenced in the complaint, nor did she note that plaintiff complained of the injuries; and (2) plaintiff's record of medical care with the FDOC discloses no complaints of back or arm injuries, and provides no link between plaintiff's migraines and the February 2012 incident. (Doc. 111, p. 20). Defendant notes "Plaintiff does not know the cause of the migraines, his first migraine complaint came six months after the alleged incident, Plaintiff likely suffered an intervening head trauma one month prior to the migraine complaints, and the contemporaneously created medical documents do not support that he suffered from the alleged injuries or further that any alleged injuries resulted from the February 2012 incident."[6]  (Doc. 111, p. 21) ("A plaintiff cannot create a question of fact based on conclusory or uncorroborated allegations from an affidavit or deposition, and cannot contradict 'contemporaneously created medical records.'") (*quoting* *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010)).[7]

---

[6] Defendant notes "[t]he available medical record is devoid of any objective medical evidence Plaintiff suffers any style of migraine headache."  (Doc. 111, p. 7).  The existence or severity of migraines, however, cannot be confirmed by objective testing.  *See Ortega v. Chater*, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996) (noting "present-day laboratory tests cannot prove the existence of migraine headaches, as is also the case with many psychiatric and psychological impairments").

[7] In *Whitehead*, an inmate claimed Dr. "Dellacona requested immediate surgery for [the inmate's] injured knee but was denied permission by [defendant] Burnside to perform the operation."  403 F. App'x at 403.  Dr. Dellacona, however, provided an affidavit stating that immediate surgery was not required for the inmate's broken kneecap and he did not speak with Burnside.  *Id.* Dellacona's contemporaneous medical records showed the doctor did not believe immediate surgery was required.  *Id.* at 404.  Drs. Niegarth and Fossier also concluded immediate surgery was not necessary.  *Id.* at 403-04.  Although the inmate produced an affidavit from a doctor

The discrepancies between plaintiff's description of his injuries and the medical records, however, merely establish that a dispute exists concerning the injuries plaintiff suffered as a result of the February 27, 2012 incident.  The parties do not dispute that plaintiff and Watson engaged in a fight during which plaintiff was struck in the head.  (Doc. 111-3) (Baker "observed Flanning and inmate Watson hitting each other in the heads and upper torsos with closed fists.").  Plaintiff's description of his injuries and symptoms is not so blatantly contradicted by the record that the court may deem them implausible and disregard them for purposes of summary judgment.  *See Reid*, 486 F. App'x at 852 ("While it is true that [the inmate's] medical records do not support the version of the facts he presents in his affidavit, all this means is that there is conflict in the evidence, which we must resolve at the summary judgment stage in [the inmate's] favor."); *Bowden v. Stokely*, No. 3:12cv652-J-99MMH-JRK, 2013 WL 4500462, at *14 (M.D. Fla. Aug. 22, 2013) ("To the extent Plaintiff's allegations concerning the severity of the beating and the claim of multiple injuries may be perceived as somewhat exaggerated and unsupported by the medical records, at this stage of the proceedings, the Court is unwilling to wholly discredit his version of events.").

---

indicating Burnside was deliberately indifferent for delaying the surgery, the affidavit was based in part upon the inmate's statement that Burnside denied the request for immediate surgery. *Id.* at 404.  The court affirmed the trial court's grant of summary judgment in favor of defendant Burnside because the inmate had "established, at best, a difference of medical opinion as to the appropriate treatment for his injured knee." *Id.*  In contrast to *Whiteside*, the present case does not involve a claim of deliberate indifference to a serious medical need.

Case No. 5:12cv337-MW-CJK

The undersigned must balance any skepticism concerning plaintiff's self-diagnosis against the obvious fact that inmates are generally unable to obtain their choice of medical care—and perhaps medical opinions—as would many plaintiffs in other settings.  Because a genuine dispute of material fact exists concerning whether plaintiff's injuries were *de minimis*, summary judgment is not appropriate on the issue of compensatory and punitive damages.

Accordingly, it is ORDERED:

1. Plaintiff's "Motion for Housing Log/and Deliberate Indifferent" (doc. 119) is DENIED.

2. Defendant's Motion to Strike Plaintiff's "Summary Judgment Motion and Memorandum" (doc. 122) is GRANTED.

And it is respectfully RECOMMENDED:

1. That defendant Baker's motion for summary judgment (doc. 111) be DENIED.

2. That this matter be referred to the undersigned for further pretrial proceedings on plaintiff's individual capacity Eighth Amendment claims against defendant Baker.

At Pensacola, Florida, this 16th day of August, 2016.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.